IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| TANNER C. SCHLEVE, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:20-cv-166 |
| | ) |
| vs. | ) PLAINTIFF DEMANDS TRIAL BY JURY |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| A Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### Parties

1. The plaintiff, Tanner C. Schleve, ("Mr. Schleve" or "Plaintiff"), has, at all times relevant hereto, been a citizen and resident of Center, North Dakota.

2. The defendant, BNSF Railway Company ("BNSF" or "Defendant"), is a railroad corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Fort Worth, Texas, and, at all times relevant hereto, BNSF has been doing business within the jurisdiction of this Court as a common carrier in interstate and intrastate commerce and has been engaged in interstate commerce and transportation.

### Jurisdiction and Venue

3. Mr. Schleve's cause of action against BNSF arises under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, as amended, and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, which provides for concurrent jurisdiction in the state and federal courts, and jurisdiction in federal courts, respectively. Jurisdiction is accordingly proper under 28 U.S.C. § 1331 and/or 45 U.S.C. § 56.

4. Venue herein is also proper, Defendant having regularly and purposefully

conducted its business activities and affairs within this judicial district and division at all times relevant hereto, and the subject incident having occurred within this judicial district and division.

## Count I

5. Plaintiff hereby re-alleges paragraphs 1 through 4 of this Complaint as if the same were set forth verbatim herein.

6. At the time of the incident described herein, Plaintiff was employed by BNSF and working for BNSF "in interstate commerce," as contemplated by the FELA § 51.

7. Plaintiff's duties with BNSF, at all times relevant hereto, were "in furtherance of interstate commerce," as contemplated by the FELA § 51.

8. At the time of the incident described herein, Plaintiff's duties with BNSF "directly and substantially affected" interstate commerce, as contemplated by the FELA § 51.

9. Pursuant to the FELA, BNSF has a non-delegable duty to provide its employees with a reasonably safe place to work.

10. On or about October 1, 2019, while working within the course and scope of his employment as a maintenance of way foreman for BNSF, Plaintiff severely injured his face and head after a railroad track switch violently struck him in the face at mile post 71.65 of the Zap subdivision on the East side of the Beulah yard in Beulah, North Dakota.

11. After a BNSF employee and operator of a rail spike puller negligently moved across a railroad track switch which was lined against him in the area where Plaintiff was working, Plaintiff stopped the rail spike puller operator and instructed him not to move his equipment and then went to inspect the switch and the rail spike puller to determine how it was sitting on the switch. Plaintiff while approaching the railroad track switch was immediately knocked unconscious when the switch swung toward him, causing severe facial and head injuries.

12.     The incident and injury described above were caused by the negligent acts and/or omissions of BNSF, and its agents, managers, supervisors, servants, and employees, acting within the scope of their railroad employment. BNSF's negligence includes, but is not limited to, the following:

    a. Failing to provide the Plaintiff with a reasonably safe place to work;

    b. Failing to provide Plaintiff with reasonably safe and properly functioning equipment;

    c. Failing to adequately protect Plaintiff from dangerous conditions and/or equipment;

    d. Failing to inspect, maintain and repair its equipment;

    e. Failing to promulgate and/or enforce appropriate rules, regulations, policies and procedures for the safe and proper performance of its work;

    f. Failing to warn Plaintiff of hazardous conditions of which it knew or had reason to know;

    g. Failing to exercise ordinary care before and during the movement of the rail spike puller; and

    h. BNSF was otherwise negligent through the negligent acts and/or omissions of its agents, officers, employees, managers, supervisory personnel and/or others, in ways that will be established through discovery.

13.     BNSF, for the reasons stated above, failed to comply with the provisions and requirements of the Federal Employers' Liability Act, 45 U.S.C. § 51-60, *et seq*.

14.     As a direct result of the aforesaid negligence and federal statutory and regulatory

violations of BNSF, acting through its agents and employees, Plaintiff was seriously and permanently injured. He has suffered physical pain, discomfort, emotional injury and mental anguish, and these will or may continue in the future; he has incurred expenses for treatment by physicians and related medical care, and in the future he will or may likely continue to incur such expenses in an effort to be cured and healed; he has missed time and lost earnings from his employment, and in the future he will or may continue to lose time and income, as well as other benefits from his employment; and he has been unable to perform many of the usual personal affairs of a man of his age and position in life and, in the future, he will or may continue to be unable to perform such affairs.

## COUNT II

15. BNSF accused Schleve of being negligent, alleged that his negligence caused his injury, and disciplined him for it.[1]

16. Schleve was not, in fact, negligent.

17. To the extent Schleve was negligent, other employees are also culpable.

18. Yet, BNSF disciplined only Schleve for his supposed negligence.

19. The supposed negligence in which Schleve engaged is common at BNSF.

20. Yet, BNSF has not disciplined any uninjured employees for such supposed negligence.

21. Congress has found that "[t]he underreporting of railroad employee injuries has long been a particular problem, and railroad labor organizations have frequently complained that harassment of employees who reported injuries is a common railroad management practice." *Araujo*, 708 F.3d at 159

---

[1] BNSF's collective bargaining agreement with Schleve's union prevents it from disciplining employees unless they commit a workplace rule violation that rises to a certain level of seriousness. In theory, this lessens the authoritarian-type control railroads have historically wielded over their employees; however, BNSF has developed an end-around to this problem. Specifically, it has instituted a voluminous set of vague workplace rules, which are arguably violated—in one way or another—by every employee on a daily basis.

(citing Hearings).

22. Railroads' motive to discourage workers from reporting injuries includes that it is exempt from Workers' Compensation, which means it is liable to employees whose injuries are caused by its negligence.

23. Railroads' motive to discourage workers from reporting injuries also includes that the agency responsible for enforcing railroad safety laws—the Federal Railroad Administration ("FRA")—uses the number of days lost to reported injuries to determine where it should send its inspectors. *See, e.g., Barati v. Metro-N. R.R. Commuter R.R. Co.*, 939 F. Supp. 2d 143, 148 (D. Conn. 2013) (quoting the testimony of the former head of the FRA's Office of Safety) (internal quotation marks omitted).

24. BNSF also ensures that supervisors have a personal motive to discourage their subordinates from reporting workplace injuries by maintaining an incentive compensation plan whereby it pays its managers a yearly bonus based, in part, on the number of FRA-reportable injuries employees report (with fewer injury reports translating to higher bonuses). BNSF maintains such a compensation plan despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area. *Araujo*, 708 F.3d 152, 161 n. 7 (citing Hearings).

25. The rule BNSF alleges Schleve violated applies companywide.

26. It is a particularly common and companywide practice at BNSF to use these and its other rules, which are vague and could apply to most any situation, to justify retaliation against employees who report injuries.

27. Despite these and other numerous FRSA violations, BNSF has not disciplined a single supervisor for retaliating against employees for engaging in FRSA-protected activity.

28. The FRSA prohibits railroad carriers from demoting, suspending, reprimanding, or in any other way discriminating against an employee for engaging in protected activity. Protected activity

other way discriminating against an employee for engaging in protected activity. Protected activity includes "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury . . . ." 49 U.S.C. § 20109(a)(4).

29. Schleve engaged in protected activity by reporting his injury to BNSF.

30. BNSF knew Schleve had engaged in protected activity when it disciplined him.

31. BNSF took an adverse action against Schleve when it disciplined him.

32. Schleve's protected activity was a contributing factor in BNSF's decision to discipline him. In fact, Schleve's discipline resulted directly from his protected activity.

WHEREFORE, for the reasons set forth above, Plaintiff, Tanner C. Schleve, respectfully demands judgment of and from the defendant, BNSF Railway Company for an award of monetary damages in an amount sufficient to compensate him for his injuries and associated damages as alleged above, together with interest and the costs of this proceeding, as well as such other and further relief in his favor as this Court may deem appropriate, including expungement of any record of misconduct regarding the incident described herein, attorneys' fees and costs, and punitive damages of $250,000.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY AS TO ALL COUNTS AND ISSUES SO TRIABLE.

TANNER C. SCHLEVE

By: _____
Jonathan L. Stone, Esquire
Nicholas D. Thompson, Esquire
THE MOODY LAW FIRM, INC.
500 Crawford Street, Suite 200
Portsmouth, Virginia 23704
jstone@moodyrrlaw.com
nthompson@moodyrrlaw.com
(757) 393-4093 Phone
(757) 397-7257 Fax
*Attorneys for Plaintiff*